UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEBORAH GRAHAM, et al.,

        Plaintiffs,

 -v-                                              No. 13CV5173-LTS-AJP

THE CITY OF NEW YORK, et al.,

        Defendants.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Plaintiffs Deborah Graham, Latosha Johnson (Individually and as Mother and Natural Guardian of P.G.), Ruby Johnson (Individually and as Mother and Natural Guardian of T.T. and K.S.), Nakyta Brown, and Nikia Everett (as Mother and Natural Guardian of M.J.) bring this action against the City of New York (the "City") and members of the New York City Police Department (the "NYPD") named in the Complaint as John and Jane Does for, inter alia, false arrest pursuant to 42 U.S.C. § 1983. The City has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Amended Complaint for failure to state a claim.

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has thoroughly reviewed the submissions of the parties and, for the following reasons, the City's motion is denied.

### BACKGROUND

The following facts are taken from the Amended Complaint. A warrant was executed at 5:30 a.m. on August 1, 2012, on Plaintiffs' three-bedroom apartment, where Plaintiffs Deborah Graham, Latosha Johnson, Ruby Johnson, and Nakyta Brown, along with four

infant children, were sleeping. (Am. Compl. ¶¶ 50 and 53.) No fewer than five NYPD officers entered the apartment, without knocking, using a battering ram to break through the door. Some of the officers wore "police" vests and helmets and they entered behind a shield. (Am. Compl. ¶ 52.) Ms. Johnson was brought from her bedroom and slammed down face-first to the floor by an officer. (Am. Compl. ¶ 61.) The adult Plaintiffs were each handcuffed and taken into the dining room of the apartment, while the children were placed next to Plaintiffs. (Am. Compl. ¶¶ 72-73.) The officers did not respond to Plaintiffs' demands to see a search warrant, and searched the entire apartment, finding no contraband. (Am. Compl. ¶¶ 74, 75, and 77.)

While the residence was being searched, an officer showed Plaintiffs photographs of three nephews of Ms. Graham, who were young males in their twenties (the "Suspects"). (Am. Compl. ¶ 79.) The officer informed Ms. Graham that they would like to speak to the Suspects. Ms. Graham informed the officer that the Suspects had not lived in the apartment for years and that she did not know where they lived. (Am. Compl. ¶ 83.) One officer stated that an informant had told police that the Suspects lived in the apartment. (Am. Compl. ¶ 85.) Plaintiffs allege that none of the Suspects had lived in the residence for several years, and that at least one of the men had been in prison for at least a year as of the date of the search. (Am. Compl. ¶¶ 83 - 86.) After failing to find the Suspects, the police announced that they were going to search for "drugs and guns." (Am. Compl. ¶ 89.)

After the second search produced no contraband or evidence, an NYPD officer began photographing the infant children despite protests from Plaintiffs. Photographs were taken of the children's faces from a distance of one to two feet without consent of either the children or their parents. (Am. Compl. ¶¶ 96-97.)

Following the search and photography, the officers left Plaintiffs' residence

without charging any person with a crime.  (Am. Compl. ¶ 103.)

Plaintiffs allege that all of the officers' actions were taken during the course, and within the scope, of their NYPD employment.  (Am. Compl. ¶¶ 110, 119, 130, 137, 148, and 154.)  Plaintiffs assert that, because the Suspects did not live in the apartment and had not lived there for some time, "law enforcement did not receive the address of the apartment from an informant, and even if [the attribution of the information to an informant] were true, the information was clearly untrustworthy."  (Am. Compl. ¶ 86.)  Plaintiffs characterize the warrant as "invalid or insufficient . . . (based on false or insufficient information)."  (Am. Compl. ¶ 107.)

Defendants have proffered a copy of what they assert is the relevant warrant in their papers in support of their motion to dismiss the complaint.  The warrant recites that it was issued upon "[P]roof by affidavit . . . by Detective Martin Campos, Manhattan North Narcotics . . . that there is reasonable cause to believe that . . . evidence tending to demonstrate the existence, membership and activities of a narcotics distribution organization . . . and evidence of a conspiracy to commit narcotics offenses . . . including but not limited to" records of communications among organization members, communications equipment and electronically stored information referring to the organization or its members, images of organization members, transaction records, drug trafficking proceeds and records thereof, electronic communication equipment and information information stored on such equipment, and evidence of ownership and use of the apartment "by any person" could be found at Plaintiffs' apartment.  No names of any individuals other than Detective Campos and the issuing judge are mentioned in the warrant, which includes no arrest authorization, and there is no specific reference to guns.  The general no-knock search authorization portion of the warrant directs the police officer executing the warrant to search "for evidence tending to demonstrate the existence, membership,

and activities of a narcotics distribution organization . . . , and evidence of the possession and sale of cocaine, and conspiracy to commit those crimes, including but not limited to the [specifically described] property." It additionally authorizes "law enforcement personnel to videotape and photograph the interior of the target apartment, and process the target apartment and property therein for fingerprints." (Ex. A to Decl. of Elissa B. Jacobs (the "Warrant").)

Plaintiffs' Amended Complaint seeks compensatory and punitive damages against Defendants for false arrest or unlawful detention (detention in the apartment pursuant to what Plaintiffs claim was an invalid warrant), unconstitutional search and seizure (principally searching the apartment pursuant to what Plaintiffs claim was an invalid warrant, searching outside of what Plaintiffs claim was the authorized scope of the warrant, questioning of the occupants concerning the Suspects, the photographing of the children, and the detention of the Plaintiffs in connection with the allegedly unauthorized additional activities), failure to intervene in the aforementioned violations, assault, battery, and negligent hiring, training, and supervision by the City. It also asserts that the City is liable for the individual Defendants' actions on the basis of respondeat superior.

## DISCUSSION

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 1949.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an

individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)) (internal quotation marks omitted).  To state a false arrest claim, a plaintiff must allege that: 1) the defendant intended to confine her, 2) she was conscious of the confinement, 3) she did not consent to the confinement and 4) the confinement was not otherwise privileged.  Broughton v. State, 37 N.Y.2d 451, 456 (1975). "[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981) (quoting Payton v. New York, 445 U.S. 573, 602 (1980)).

>The City seeks the dismissal of all of Plaintiffs' claims, asserting that the Warrant was facially valid and that Plaintiffs have failed to allege facts sufficient to raise a question as to the actual validity of the warrant.  However, Plaintiffs allege in essence that the only apparent basis for a search of the apartment was the proposition that the Suspects lived there and were participants in the drug organization, and there could not have been any reliable information supporting any allegation that any of the Suspects was a current resident of the apartment.

>A plaintiff may state a claim of false arrest notwithstanding the prior issuance of a facially valid search warrant by demonstrating that the "officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" See McColley v. Cnty. of Rensselaer, 740 F.3d 817, 823 (2d Cir. 2014) (internal quotation marks omitted).  "Recklessness is inferred when the omitted information was 'clearly critical' to the determination of probable

cause." Id. (quoting Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991)). "The materiality of a misrepresentation or an omission in this context is a mixed question of law and fact. The legal component depends on whether the information is relevant to the probable cause determination under controlling substantive law." Id., at 823 (quoting Velardi v. Walsh, 40 F.3d 569, 574 (2d Cir. 1994)). As pleaded, Plaintiffs' claim places the question of the connection between the Suspects and the apartment as central to the probable cause issue. They plead facts that, if proven as to one or more of the Doe Defendants, could lead a reasonable fact finder to determine that the Warrant was procured through reckless or deliberately deceptive conduct. Plaintiffs have thus pleaded plausibly their false arrest and illegal search claims insofar as they are premised on invalidity of the Warrant.

The City further argues that the Doe Defendants are, in any event, entitled to qualified immunity and that dismissal of the complaint is appropriate at this stage, because the warrant was facially valid. "An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." Dunaway v. New York, 442 U.S. 200, 208 n. 9 (1979). In order to defeat a claim of qualified immunity, a plaintiff must allege that "the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." See Velardi, 40 F.3d at 573. For the reasons explained above,

the Complaint is sufficient to raise factual questions as to the knowledge and involvement of the individual defendants in connection with the procurement of the warrant and thus the objective reasonableness of the officers' reliance on the warrant.  Dismissal on the basis of qualified immunity is inappropriate at this juncture.

The City further asserts that Plaintiffs' negligent hiring claim must be dismissed, as such a claim against the City is viable only to the extent the tortious conduct of its employees was outside of the scope of their employment.  See Colodney v. Continuum Health Partners, Inc., No. 03CV7276, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004) ("A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment.").  Although Plaintiffs allege that the actions complained of were within the scope of the Doe Defendants' employment, the Doe Defendants have not yet been identified or served, and the City's Corporation Counsel has not made its own determination as to whether it will represent the Defendants, a decision that requires a determination as to whether the action complained of was within the scope of the Defendant's employment.  The dismissal request is thus premature and is denied without prejudice.  See Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (citing N.Y. Gen. Mun. Law § 50-k(2)).

Plaintiffs' remaining claims – for failure to intervene, assault and battery, and against the City on the basis of respondeat superior – are pleaded sufficiently, as Plaintiffs have successfully framed an issue as to the validity of the warrant and, thus, whether the search and related steps taken by the officers were privileged.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss the Amended Complaint is denied in its entirety.

The scheduled initial pretrial conference in this case is hereby rescheduled from March 20, 2015, to **February 27, 2015, at 9:45 a.m.** in Courtroom 12D.  The City is directed to supply Plaintiffs' counsel promptly with information identifying the Doe Defendants.

This Order resolves docket entry numbers 21 and 26.

SO ORDERED.

Dated: New York, New York
       January 20, 2015

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge