UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH GRAHAM, LATOSHA JOHNSON,
Individually, and as Mother and Natural Guardian of P.G.,
RUBY JOHNSON, Individually, and as Mother and Natural
Guardian of K.S. and T.T., NAKYTA BROWN, and NIKIA
EVERETT, as Mother and Natural Guardian of M.J.,

Civ. No.: 13-CV-5173 (LTS)

Plaintiffs,

**SECOND AMENDED
COMPLAINT**

– against –

CITY OF NEW YORK, DETECTIVE MARTIN CAMPOS,
CAPTAIN SHAWN CHARLSON, DETECTIVE JOSEPH
PINDER, DETECTIVE KEITH KNIGHT, DEFENDANT
LIEUTENANT TRACEY SERVELLO, DETECTIVE
GLENDA WAJER, POLICE OFFICER RODRIGUES, and
POLICE OFFICER JOHN DOES 1-10,

**JURY TRIAL DEMANDED**

Defendants.

Plaintiffs Deborah Graham, Latosha Johnson, Individually, and as Mother and Natural

Guardian of P.G., Ruby Johnson, Individually, and as Mother and Natural Guardian of K.S. and

T.T., Nakyta Brown, and Nikia Everett, as Mother and Natural Guardian of M.J., by their

attorneys, Mark A. Marino, PC, for their Second Amended Complaint against Defendant City of

New York, Defendant Detective Martin Campos, Defendant Captain Shawn Charlson, Defendant

Detective Joseph Pinder, Defendant Detective Keith Knight, Defendant Lieutenant Tracey

Servello, Defendant Detective Glenda Wajer, Defendant Police Officer Rodrigues, and John

Does 1-10, allege as follows, upon personal knowledge and upon information and belief:

## NATURE OF THE ACTION

1.     This is an action for physical, psychological, and emotional injuries, loss of freedom, lost wages, and past and future medical expenses, among other things, sustained by the plaintiffs arising out of the assault, battery, false arrest, false imprisonment, use of excessive force, illegal search, and failure to intervene perpetrated by the individual defendants on August 1, 2012, as well as for damages resulting from Defendant City of New York's negligent hiring, training, and supervision.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over the instant action, pursuant to 28 U.S.C. §§1331 and 1343, as this is a civil action asserting claims under the federal civil rights laws.

3.     This Court has supplemental jurisdiction over the claims asserted under New York state law, pursuant to 28 U.S.C. §1367, as these claims are so related to the plaintiffs' claims under the federal civil rights laws that they form part of the same case or controversy.

4.     Venue is proper, pursuant to 28 U.S.C. §1391, as the events and transactions giving rise to the plaintiffs' claims occurred within this District.

## PARTIES

5.     Plaintiff Deborah Graham is, and was at the time of the incidents giving rise to this action, a resident of the County of New York, State of New York

6.     Plaintiff Deborah Graham was sixty-five years old at the time of the incidents giving rise to this action.

7.     Plaintiff Latosha Johnson is, and was at the time of the incidents giving rise to this action, a resident of the County of New York, State of New York.

8.     Plaintiff Latosha Johnson was thirty years old at the time of the incidents giving rise to this action.

9.     Plaintiff Ruby Johnson is, and was at the time of the incidents giving rise to this action, a resident of the County of Bronx, State of New York.

10.     Plaintiff Ruby Johnson was twenty-nine years old at the time of the incidents giving rise to this action.

11.     Plaintiff Ruby Johnson is claiming lost wages.

12.     Plaintiff Nakyta Brown is, and was at the time of the incidents giving rise to this action, a resident of the County of New York, State of New York.

13.     Plaintiff Nakyta Brown was twenty years old at the time of the incidents giving rise to this action.

14.     Plaintiff Nikia Everett is, and was at the time of the incidents giving rise to this action, a resident of the County of Philadelphia, Commonwealth of Pennsylvania.

15.     P.G. is the infant daughter of Plaintiff Latosha Johnson and resides in the County of New York, State of New York ("Infant Plaintiff P.G.").

16.     Infant Plaintiff P.G. was three years old at the time of the incidents giving rise to this action.

17.     K.S. is the infant son of Plaintiff Ruby Johnson and resides in the County of Bronx, State of New York ("Infant Plaintiff K.S.").

18.     Infant Plaintiff K.S. was eight years old at the time of the incidents giving rise to this action.

19.     T.T. is the infant son of Plaintiff Ruby Johnson and resides in the County of Bronx, State of New York ("Infant Plaintiff T.T.").

20.    Infant Plaintiff T.T. was five years old at the time of the incidents giving rise to this action.

21.    M.J. is the infant daughter of Nikia Everett and resides in the County of Philadelphia, Commonwealth of Pennsylvania ("Infant Plaintiff M.J.").

22.    Infant Plaintiff M.J. was six years old at the time of the incidents giving rise to this action.

23.    Plaintiff Deborah Graham, Plaintiff Latosha Johnson, Plaintiff Ruby Johnson, and Plaintiff Nakyta Brown are hereinafter referred to, collectively, as the "Adult Plaintiffs."

24.    Infant Plaintiff P.G., Infant Plaintiff K.S., Infant Plaintiff T.T., and Infant Plaintiff M.J. are hereinafter referred to, collectively, as the "Infant Plaintiffs."

25.    The Adult Plaintiffs, the Infant Plaintiffs, and Plaintiff Nikia Everett are referred to throughout this Second Amended Complaint, collectively, as "Plaintiffs."

26.    Defendant City of New York is, and was at the time of the incidents giving rise to this action, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

27.    Defendant Detective Martin Campos is, and was at the time of the incidents giving rise to this action, a member of the New York City Police Department (the "NYPD") employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Campos").

28.    Defendant Campos was, at the time of the incidents giving rise to this action, acting under color of state law.

29.    Defendant Campos was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

4

30.     Defendant Campos was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

31.     Defendant Captain Shawn Charlson is, and was at the time of the incidents giving rise to this action, a member of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Charlson").

32.     Defendant Charlson was, at the time of the incidents giving rise to this action, acting under color of state law.

33.     Defendant Charlson was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

34.     Defendant Charlson was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

35.     Defendant Detective Joseph Pinder, Shield No. 310, is, and was at the time of the incidents giving rise to this action, a member of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Pinder").

36.     Defendant Pinder was, at the time of the incidents giving rise to this action, acting under color of state law.

37.     Defendant Pinder was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

38.     Defendant Pinder was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

39.     Defendant Keith Knight, Shield No. 2886, is, and was at the time of the incidents giving rise to this action, a member of the New York City Police Department (the "NYPD")

employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Knight").

40. Defendant Knight was, at the time of the incidents giving rise to this action, acting under color of state law.

41. Defendant Knight was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

42. Defendant Knight was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

43. Defendant Lieutenant Tracey Servello is, and was at the time of the incidents giving rise to this action, a member of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Servello").

44. Defendant Servello was, at the time of the incidents giving rise to this action, acting under color of state law.

45. Defendant Servello was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

46. Defendant Servello was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

47. Defendant Detective Glenda Wajer, Shield No. 7229, is, and was at the time of the incidents giving rise to this action, a member of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Wajer ").

48. Defendant Wajer was, at the time of the incidents giving rise to this action, acting under color of state law.

49. Defendant Wajer was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

50. Defendant Wajer was, at the time of the incidents giving rise to this action, a member of the NYPD's Manhattan North Narcotics Unit.

51. Defendant Police Officer Rodrigues is, and was at the time of the incidents giving rise to this action, a member of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("Rodrigues").

52. Defendant Rodrigues was, at the time of the incidents giving rise to this action, acting under color of state law.

53. Defendant Rodrigues was, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

54. Defendant Rodrigues was, at the time of the incidents giving rise to this action, a member of the NYPD's 25th Precinct.

55. Defendant John Does 1-10 were, at the time of the incidents giving rise to this action, members of the NYPD employed by Defendant City of New York in connection with its control, operation, and maintenance of the NYPD ("John Does").

56. Defendant John Does were, at the time of the incidents giving rise to this action, acting under color of state law.

57. Defendant John Does were, at the time of the incidents giving rise to this action, acting within the scope of employment with the NYPD and Defendant City of New York.

58. Defendant Campos, Defendant Charlson, Defendant Pinder, Defendant Knight, Defendant Servello, Defendant Wajer, Defendant Rodrigues, and Defendant John Does are hereinafter referred to, collectively, as the "Individual Defendants."

59.     Defendant City of New York, Defendant Campos, Defendant Charlson, Defendant Pinder, Defendant Knight, Defendant Servello, Defendant Wajer, Defendant Rodrigues, and Defendant John Does are hereinafter referred to, collectively, as "Defendants."

60.     Defendant City of New York has never admitted or denied that any of the Individual Defendants were, at the time of the incidents giving rise to this action, acting within the scope of employment by the NYPD and Defendant City of New York.

## PROCEDURAL REQUIREMENTS

61.     Plaintiffs have complied with General Municipal Law Section 50 and all procedural requirements necessary to commence a lawsuit against Defendants, including Defendant City of New York.

62.     This is an action for physical, psychological, and emotional injuries, loss of freedom, lost wages, and past and future medical expenses, among other things, sustained by one or more of Plaintiffs arising out of actions perpetrated by Defendants on August 1, 2012.

63.     On August 7, 2012, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, and/or its agent(s), on behalf of Plaintiff Deborah Graham.

64.     On August 10, 2012, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, and/or its agent(s), on behalf of Plaintiffs Nakyta Brown, Latosha Johnson, Individually, and as Mother and Natural Guardian of Infant Plaintiff P.G., and Ruby Johnson, Individually, and as Mother and Natural Guardian of Infant Plaintiff K.S. and Infant Plaintiff T.T.

8

65.     On October 9, 2012, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, and/or its agent(s), on behalf of Plaintiff Nikia Everett, as Mother and Natural Guardian of Infant Plaintiff M.J.

66.     On October 11, 2012, the following Plaintiffs (and Infant Plaintiffs) appeared for, and testified at, a hearing pursuant to Section 50(h) of the General Municipal Law of New York at the request of Defendant City of New York and/or its agent(s): Plaintiff Deborah Graham, Plaintiff Latosha Johnson, Plaintiff Ruby Johnson, Infant Plaintiff K.S., and Infant Plaintiff T.T.

67.     Infant Plaintiff P.G. appeared for, but did not testify at, a hearing pursuant to Section 50(h) of the General Municipal Law of New York at the request of Defendant City of New York and/or its agent(s) because she was less than four years old.

68.     On December 17, 2012, Plaintiff Nikia Everett and Infant Plaintiff M.J. appeared for, and testified at, a hearing pursuant to Section 50(h) of the General Municipal Law of New York at the request of Defendant City of New York and/or its agent(s).

69.     On January 24, 2013, Plaintiff Nakyta Brown appeared for, and testified at, a hearing pursuant to Section 50(h) of the General Municipal Law of New York at the request of Defendant City of New York and/or its agent(s).

70.     Defendant City of New York, and/or its agent(s), has refused or neglected to make any adjustment or payment on Plaintiffs' claims (as stated in Plaintiffs' Notices of Claim).

71.     Plaintiffs commenced this action within one year and ninety days of the date of accrual of the instant action.

## FACTUAL ALLEGATIONS

72.    At approximately 5:30 a.m. on August 1, 2012, the Individual Defendants used a battering ram to bash in the door of Apartment 2301 at 230 East 123rd Street in the County of New York, State of New York.

73.    The Individual Defendants did not knock or identify themselves before entering the apartment.

74.    The Individual Defendants stormed the apartment behind a shield, and certain of the Individual Defendants were wearing "police vests," helmets, and even camouflage.

75.    Plaintiffs, who were dispersed throughout four bedrooms in the apartment, were awakened by the noise of either the door bashing or the yelling of the Individual Defendants.

76.    Defendant Rodrigues, upon information and belief, and another Individual Defendant entered Plaintiff Deborah Graham's bedroom, where she was sleeping with two of her grandchildren, Infant Plaintiff K.S. and Infant Plaintiff M.J.

77.    Infant Plaintiff M.J., who lives in Philadelphia, Pennsylvania, was visiting her relatives for the summer.

78.    Defendant Rodrigues, upon information and belief, entered the room with his gun (and flashlight) drawn and yelled at Plaintiff Deborah Graham to get on the floor and then handcuffed her, all in front of Infant Plaintiff K.S. and Infant Plaintiff M.J.

79.    Defendant Rodrigues pointed his gun at Plaintiff Deborah Graham.

80.    Defendant Rodrigues, upon information and belief, and another Individual Defendant took Plaintiff Deborah Graham into the living room.

81.    Defendant Servello later brought Infant Plaintiff K.S. and Infant Plaintiff M.J. into the living room.

10

82. Defendant Pinder and, upon information and belief, Defendant Charlson, entered the bedroom in which Plaintiff Ruby Johnson and Infant Plaintiff T.T. had been sleeping before waking to the sound of a bashed-in door.

83. Defendant Pinder grabbed Plaintiff Ruby Johnson and slammed her down to the floor face-first and in the stomach area.

84. Defendant Pinder and, upon information and belief, Defendant Charlson, handcuffed Plaintiff Ruby Johnson and took her into the living room.

85. Defendant Servello later brought Infant Plaintiff T.T. into the living room.

86. Defendant Rodrigues, upon information and belief, and another Defendant John Doe entered the bedroom in which Plaintiff Latosha Johnson and Infant Plaintiff P.G. had been sleeping before waking to the sound of a bashed-in door.

87. Defendant Rodrigues, upon information and belief, and another Defendant John Doe handcuffed Plaintiff Latosha Johnson and took her into the living room.

88. Defendant Servello later brought Infant Plaintiff P.G. into the living room.

89. Defendant Knight and Defendant Rodrigues entered the bedroom in which Plaintiff Nakyta Brown was sleeping before waking to the sound of a bashed-in door.

90. Defendant Knight and Defendant Rodrigues handcuffed Plaintiff Nakyta Brown and took her into the living room.

91. At this time, Plaintiff Nakyta Brown was in her underwear, covered only by a sheet, in front of Plaintiffs (including the Infant Plaintiffs).

92. At one point, Plaintiff Nakyta Brown's sheet starting coming off, exposing the Infant Plaintiffs to their half-naked aunt.

93. Infant Plaintiff P.G. pulled the cover back onto the Infant Plaintiffs' half-naked aunt, Plaintiff Nakyta Brown.

94. The Adult Plaintiffs were each placed in handcuffs and lined up in the dining room.

95. The Infant Plaintiffs were instructed to, and did, sit together next to the Adult Plaintiffs.

96. The Adult Plaintiffs each asked to see a warrant.

97. The Individual Defendants did not respond to any of the Adult Plaintiffs' pleas to see a warrant.

98. The Infant Plaintiffs saw their aunts, mothers, and grandmother handcuffed.

99. The Individual Defendants conducted a full search of the entire apartment and found no contraband.

100. Defendant Charlson had a manila envelope with him.

101. While certain of the Individual Defendants were searching the apartment, Defendant Charlson pulled out pictures of certain of Plaintiffs' relatives, three African-American males in their twenties.

102. Defendant Charlson told Plaintiff Deborah Graham that they need to talk about her sons.

103. Plaintiff Deborah Graham asked for an arrest warrant, which would refer to the young men by name.

104. The search warrant presented to Plaintiffs by Corporation Counsel was obtained based on false information provided recklessly or knowingly by Defendant Campos.

105. The search warrant does not contain the name or description of any individual, much less any specific individual to be searched or questioned.

106. Plaintiff Deborah Graham explained to Defendant Charlson that the young men, who are actually adopted nephews, had not lived there for years and that she did not know where they lived.

107. One of the targeted youths had been in jail for at least a year.

108. One or more of the Individual Defendants told Plaintiff Deborah Graham that an informant told the police the young men lived there.

109. Plaintiffs believe the warrant was insufficient because the young men had not lived there for years, and one of the young men has been imprisoned for that amount of time. Plaintiffs believe that law enforcement did not receive the address of the apartment from an informant, and even if that were true, the informant was clearly untrustworthy.

110. Defendant Charlson then took Plaintiff Deborah Graham downstairs alone.

111. Plaintiff Deborah Graham asked what the young men were wanted for, but Defendant Charlson would not say.

112. After failing to find Plaintiffs' sought-after family members and in response to Plaintiffs' continued demands to know why the officers were there, Defendant Charlson told Plaintiffs that they were going to search "for drugs and guns."

113. The Individual Defendants knew the search warrant made no mention of guns, firearms, or any other sort of weaponry.

114. The Individual Defendants knew the search warrant was not an arrest warrant, nor did it identify any individual(s) to be searched, interrogated, or arrested.

115. The Individual Defendants, who had previously conducted searches of numerous apartments, had no idea what the warrant (presented to Plaintiffs by Corporation Counsel) stated or what they were specifically looking for.

116. The Adult Plaintiffs were handcuffed and detained throughout the search.

117. Defendant Servello took pictures of the rooms in the apartment.

118. Upon information and belief, during the search, one or more of the Individual Defendants photographed the Adult Plaintiffs while they were detained and handcuffed with the sole intent of capturing the image of the Adult Plaintiffs.

119. At the end of the search, Defendant Servello took individual pictures of each of the four Infant Plaintiffs without their consent or the consent of their parents.

120. Defendant Servello was only one or two feet away from the Infant Plaintiffs when she took their pictures (characterized as "head shots").

121. Plaintiff Latosha Johnson jumped in front of her three-year-old daughter, Infant Plaintiff P.G., to prevent Defendant Servello from taking the picture (or "head shot") of Infant Plaintiff P.G.

122. Defendant Knight told Plaintiff Latosha Johnson that he would throw her on the floor if she jumped in front of her young daughter again.

123. Defendant Servello threatened to call ACS to take the Infant Plaintiffs away.

124. The taking of the Infant Plaintiffs' pictures lengthened all Plaintiffs' period of detention in handcuffs.

125. The Individual Defendants were all in close proximity to the violations of Plaintiffs' civil rights and the violations of Plaintiffs' civil rights lasted long enough to make it possible for any of the Individual Defendants to intervene on behalf of Plaintiffs.

126. The Individual Defendants never found any contraband, never took anyone out of the apartment, and Plaintiffs were never charged with a crime.

127. This action falls within one or more of the exemptions set forth in CPLR §1602.

### FIRST CLAIM FOR RELIEF
**VIOLATION OF 42 U.S.C. 1983 – FALSE ARREST/UNLAWFUL DETENTION**
**As Against the Individual Defendants**

128. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 127, inclusive, as though fully set forth herein.

129. Under the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiffs have the right to be free from unreasonable and illegal searches and seizures, including false arrests and false imprisonment.

130. The Individual Defendants violated Plaintiffs' rights when they intentionally arrested/detained and confined Plaintiffs, who were conscious at the time, without consent, justification, privilege, or probable cause during the Individual Defendants' illegal search based on an invalid or insufficient warrant (based on false or insufficient information provided by Defendant Campos).

131. The Individual Defendants violated Plaintiffs' rights when they intentionally arrested/detained and confined Plaintiffs, who were conscious at the time, without consent, justification, privilege, or probable cause during the time that Defendant Servello was taking pictures of the Infant Plaintiffs.

132. The Individual Defendants' actions caused injuries to Plaintiffs, including loss of freedom and psychological injury, among other things.

133. The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

134. The Individual Defendants were acting under color of state law at all times during the incidents giving rise to this action.

135. The actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS – UNCONSTITUTIONAL SEARCH AND SEIZURE**
**As Against the Individual Defendants**

136. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 135, inclusive, as though fully set forth herein.

137. Under the Constitution of the United States of America and 42 U.S.C. 1983, Plaintiffs have the right to be free from illegal searches and seizures in their homes.

138. The Individual Defendants violated Plaintiffs' rights when they intentionally arrested and confined Plaintiffs in their apartment and searched the apartment in a way which exceeded the authority of that granted by the search warrant produced to Plaintiffs by Corporation Counsel (but not produced that the time of the search) by searching generally for "drugs," when the search warrant purports to allow a search for evidence of activities specifically regarding cocaine.

139. The Individual Defendants violated Plaintiffs' rights when they intentionally arrested and confined Plaintiffs in their apartment and searched the apartment in a way which

exceeded the authority of that granted by the search warrant produced to Plaintiffs by Corporation Counsel (but not produced that the time of the search) by searching for guns.

140. The Individual Defendants violated Plaintiffs' rights when they intentionally arrested and confined Plaintiffs in their apartment and interrogated Plaintiffs about the young men and in a way which exceeded the authority of that granted by the search warrant produced to Plaintiffs by Corporation Counsel (but not produced that the time of the search).

141. The Individual Defendants violated Plaintiffs' rights when they took head shots of all Plaintiffs, which exceeded the authority of that granted by the search warrant produced to Plaintiffs by Corporation Counsel (but not produced that the time of the search).

142. The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with the NYPD and Defendant City of New York.

143. The Individual Defendants were acting under color of state law at all times during the incidents giving rise to this action.

144. The actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS – FAILURE TO INTERVENE
#### As Against the Individual Defendants

145.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 144, inclusive, as though fully set forth herein.

146.    Under the Constitution of the United States of America and 42 U.S.C. 1983, police officers have an affirmative duty to protect the constitutional rights of citizens by intervening when other police officers commit constitutional violations in their presence.

147.    At the time of the incidents giving rise to this action, one or more of the Individual Defendants violated Plaintiffs' constitutional rights when, in his/her/their presence, one or more of the remaining Individual Defendants falsely arrested Plaintiffs, yet did not intervene to protect Plaintiffs.

148.    At the time of the incidents giving rise to this action, one or more of the Individual Defendants violated Plaintiffs' constitutional rights when, in his/her/their presence, one or more of the remaining Individual Defendants illegally searched Plaintiffs' apartment and exceeded the scope of the search warrant produced to Plaintiffs by Corporation Counsel (but not produced that the time of the search), yet did not intervene to protect Plaintiffs.

149.    At the time of the incidents giving rise to this action, one or more of the Individual Defendants violated Plaintiffs' constitutional rights when, in his/her/their presence, one or more of the remaining Individual Defendants used excessive force against one or more of Plaintiffs, yet did not intervene to protect Plaintiffs.

150.    At the time of the incidents giving rise to this action, one or more of the Individual Defendants violated Plaintiffs' constitutional rights when, in his/her/their presence, one or more of the remaining Individual Defendants interrogated one or more of Plaintiffs in a

way not authorized by the search warrant produced to Plaintiffs by Corporation Counsel, yet did not intervene to protect Plaintiffs.

151.    At the time of the incidents giving rise to this action, one or more of the Individual Defendants violated Plaintiffs' constitutional rights when, in his/her/their presence, one or more of the remaining Individual Defendants illegally took individual head shots of each of the Infant Plaintiffs from close range.

152.    The Individual Defendants' actions caused injuries to Plaintiffs, including psychological and emotional injuries, loss of freedom, and past and future medical expenses, among other things.

153.    The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

154.    The actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### FALSE ARREST/FALSE IMPRISONMENT
### As Against Defendants

155.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 154, inclusive, as though fully set forth herein.

156.    The Individual Defendants intentionally arrested and confined Plaintiffs without probable cause, without justification, and without consent.

157.    The Individual Defendants intentionally caused Plaintiffs to be imprisoned and confined in their own apartment without their consent.

158.    The Individual Defendants did not have probable cause or other justification to imprison and confine Plaintiffs, who were conscious during this time.

159.    The Individual Defendants' actions caused injuries to Plaintiffs, including loss of freedom and psychological injury, among other things.

160.    The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

161.    Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiffs during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

162.    The actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### ASSAULT
### As Against Defendants

163.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 162, inclusive, as though fully set forth herein.

164.    At the time of the incidents giving rise to this action, Defendants intentionally placed the Adult Plaintiffs in apprehension of imminent harmful contact, offensive conduct, and unwanted contact, without justification or privilege.

165.    The Infant Plaintiffs feared imminent harmful contact, offensive conduct, and unwanted contact.

166.  The Individual Defendants' actions caused injuries to Adult Plaintiffs, including loss of freedom and psychological injury, among other things.

167.  At the time of the incidents giving rise to this action, Defendants intentionally placed the Infant Plaintiffs in apprehension of imminent harmful contact, offensive conduct, and unwanted contact, without justification or privilege.

168.  At the time of the incidents giving rise to this action, Defendants intentionally placed the Infant Plaintiffs in apprehension of imminent harmful contact, offensive conduct, and unwanted contact, without justification or privilege while taking their head shots from one or two feet away, among other things.

169.  The Infant Plaintiffs feared imminent harmful contact, offensive conduct, and unwanted contact.

170.  The Individual Defendants' actions caused injuries to Infant Plaintiffs, including loss of freedom and psychological injury, among other things.

171.  The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

172.  Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiffs during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

173.  The aforementioned actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## BATTERY
### As Against Defendants

174. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 173, inclusive, as though fully set forth herein.

175. At the time of the incidents giving rise to this action, the Individual Defendants intentionally initiated wrongful and excessive physical contact with Plaintiffs without Plaintiffs' consent.

176. Defendants' actions caused injuries to Plaintiffs, including loss of freedom and psychological injury, among other things.

177. The Individual Defendants took the aforementioned actions against Plaintiffs during the course, and within the scope, of employment with Defendant City of New York.

178. Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiffs during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

179. The aforementioned actions taken by the Individual Defendants against Plaintiffs were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiffs to punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT HIRING, TRAINING, AND SUPERVISION
### As Against Defendant City of New York

180.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 179, inclusive, as though fully set forth herein.

181.    Defendant City of New York has a duty to train and supervise its police force with respect to the proper way to handle a "no-knock" search.

182.    Defendant City of New York knew or should have known that the Individual Defendants had a propensity for improperly handling "no-knock" searches.

183.    Defendant City of New York has a duty to train and supervise its police force with respect to limiting the scope of a search (pursuant to a search warrant) to that allowed by the search warrant.

184.    Defendant City of New York knew or should have known that the Individual Defendants had a propensity for performing searches (pursuant to a search warrant) in a way that exceed(ed) the scope of the search warrant.

185.    Defendant City of New York has a duty to train and supervise its police force with respect to the proper way to handle situations concerning the treatment of children during searches (and not taking their pictures).

186.    Defendant City of New York knew or should have known that the Individual Defendants had a propensity for improperly handling situations concerning the treatment of children during searches (and not taking their pictures).

187.    Defendant City of New York breached its aforementioned duties.

188.    Plaintiffs sustained injuries as a result of the breaches of the aforementioned duties of Defendant City of New York (by the Individual Defendants).

189.    Defendant City of New York is liable for the acts of its agents/employees, including the Individual Defendants, taken against Plaintiffs during the course, and within the scope, of employment by Defendant City of New York under the doctrine of *respondeat superior*.

## DEMAND FOR JURY TRIAL

190.    Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter Judgment in their favor and against Defendants as follows:

a.    compensatory damages as against Defendants, jointly and severally, in a combined amount to be determined at trial, but not less than five million dollars ($5,000,000.00);

b.    punitive damages as against Defendants, jointly and severally, in a combined amount to be determined at trial, but not less than five million dollars ($5,000,000.00);

c.    attorney's fees incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the discretion of this Court;

d.    attorney's fees incurred during this action, pursuant to statute or common law, the determination of which lies within the discretion of this Court;

e.    costs incurred during this action, pursuant to 42 U.S.C. 1988(b), the determination of which lies within the discretion of this Court;

f.    costs incurred during this action, pursuant to statute or common law, the determination of which lies within the discretion of this Court;

g.      expert fees incurred during this action, pursuant to 42 U.S.C. 1988(c), the

determination of which lies within the discretion of this Court;

h.      all statutory interest on any sums awarded to Plaintiffs; and

i.      such other and further relief as the Court deems proper and fair.

Dated: New York, New York
       March 25, 2015

Respectfully submitted,

MARK A. MARINO, PC

Mark A. Marino (MM0676)
*Attorney for Plaintiffs*
380 Lexington Avenue, 17th Floor
New York, New York 10168
Tel:  212.748.9552
Fax:  646.219.5350